UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Civil No. 17-136 (PAM/FLN) |
| Plaintiff, | **SEALED REPORT AND RECOMMENDATION** |
| v. | |
| KleinBank, | |
| Defendant. | |

_____

Christopher Belen and Ernestine Ward, for Plaintiff.
John Lundquist and Anupama Sreekanth, for Defendant.
Joseph Witt, for *Amicus*.

_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on Defendant KleinBank's motion to dismiss (ECF No. 18). This matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. *See* Order, ECF No. 12. For the reasons that follow, the Court recommends that Defendant's motion to dismiss (ECF No. 18) be **DENIED**.

### I. BACKGROUND

**A.    KleinBank's Financial Services and Lending Practices**

In 2005, Defendant KleinBank was created through a consolidation of nine banks into a single, charter-bank. *See* ECF No. 1 at 9–10. KleinBank functions as a financial depository and lending institution, and offers a range of financial products including deposit services, checking and savings accounts, residential mortgages, and consumer and commercial loans. *See generally id.* KleinBank is principally headquartered in Chaska, Minnesota, and as of March 2016, its assets totaled nearly two billion dollars. *See id.* at 4.

The United States alleges that from 2010 through 2015, KleinBank redlined its residential mortgage lending services to avoid offering credit in majority, minority neighborhoods.[1] *See id.* at 3–4. The United States claims that during the relevant 2010 through 2015 period, comparable lenders generated mortgage applications in majority, minority neighborhoods "at over five times the rate of KleinBank, and originated loans in majority, minority [residential neighborhood] tracts at over four times the rate of KleinBank." *Id.* at 4. Specifically, the United States claims that only "62 applications, or 1.06% [of KleinBank's mortgage applications] were related to residential property located in majority-minority census tracts. During that same time period, comparable lenders generated 5.58% of their single-family residential loan[s] in majority-minority census tracts . . . ." *Id.* at 8. In addition, the United States claims that KleinBank originated a smaller proportion of reportable, residential mortgage loans in majority, minority neighborhoods relative to comparable lenders during the relevant period. *See id.* at 9. For example, "only 51, or 1.16%, of KleinBank's 4,392 loans were secured by residential property located in majority-minority census tracts. In contrast, 5.15% of residential loans originated by comparable lenders were secured by residential property located in majority-minority tracts — more than four times the rate of KleinBank." *Id.*

The United States alleges that KleinBank's lending practices effectively denied, or at least discouraged, equal opportunity for borrowers from majority, minority neighborhoods from obtaining, or applying for, residential mortgage loans through KleinBank. *See id.* at 2. The United States further alleges that KleinBank's limited number of borrows from majority, minority neighborhoods is the product of an intentional business philosophy of excluding most

---

1   Redlining is the practice by which a lender or other financial institution denies or avoids providing credit related services to majority, minority neighborhoods. *See* ECF No. 1 at 1.

majority, minority census tracts in the Minneapolis-St. Paul-Bloomington, Minnesota-Wisconsin, Metropolitan Statistical Area (the "MSA") from its market or credit assessment area, and favoring majority, white borrowers. *See id.* at 2. The United States alleges that KleinBank's business philosophy resulted in it only establishing branch offices and mortgage loan officers in majority, white census tracts, and marketing its financial services and products toward majority, white census tracts and borrowers. *See generally id.*

For example, the United States claims that "KleinBank has targeted a portion of its marketing efforts to within a limited radius of its branch locations, which excludes majority, minority neighborhoods." *Id.* at 7. In terms of branch locations, the United States alleges that "KleinBank currently has 19 full-service branches and one business loan processing office in the MSA," all of which "are and have been located in majority-white census tracts." *Id.* at 6. In addition, beginning in 2007, "KleinBank has opened or acquired at least seven full-service branches in the MSA, and one business loan processing office. All of these are located in majority-white census tracts." *Id.* at 7. However, "[n]one of [KleinBank's] residential mortgage loan officers maintain offices in majority-minority census tracts." *Id.*

On January 13, 2017, the United States initiated this action, raising two discrimination counts against KleinBank under the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 *et seq.*, and the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 *et seq. See id.* at 10–11. Count one alleges that KleinBank discriminated on the basis of race and/or national origin, and count two alleges that KleinBank engaged in a pattern or practice of discrimination. *See id.* at 10–12. The United States seeks declaratory judgment, injunctive relief, and monetary damages "to all the victims of KleinBank's discriminatory policies and practices for the injuries it caused[,]" and the

imposition of a civil penalty "against KleinBank . . . in order to vindicate the public interest." *Id.* at 13.

**B.     The CRA and FDIC**

Klienbank, as a federally insured financial, deposit institution, is required to comply with the Community Reinvestment Act ("CRA"), 12 U.S.C. § 2901 *et seq*. *See generally* ECF No. 1. The CRA requires that each federal financial supervisory agency's examination of a given financial institution, assess that institution's record of meeting the credit needs of its entire community, including low and moderate income neighborhoods. *See*, *e.g.*, ECF No. 23, Ex. D at 4. The CRA further requires that all financial institutions demarcate an assessment area, or geographic zone, in which it intends to operate and offer financial services. *See generally* ECF No. 1. A CRA "assessment area must consist of one or more metropolitan areas or contiguous political subdivisions unless that area would be extremely large, of unusual configuration, or divided by significant geographic barriers." *Id.* at 5 (citing 12 C.F.R. § 228.41(c)–(d)). "A bank's [CRA] assessment area must consist only of whole geographies, and may not reflect illegal discrimination." *Id.* (citing 12 C.F.R. § 228.41(e)).

The United States claims that since "2007, KleinBank's main CRA assessment area has consisted of [the entirety of] Anoka, Carver, Dakota, McLeod, Scott, Sherburne, Sibley, and Wright Counties[,]" and a smaller, second assessment area consisting of a portion of rural, western Minnesota. *Id.* To the extent that KleinBank offers financial services within Hennepin and Ramsey Counties, the United States alleges that KleinBank configured its "main CRA assessment area to be horseshoe-shaped[,]" with the intent of offering financial services to "the majority white suburbs . . . ." *Id.* The United States alleges that KleinBank's horseshoe-shaped

CRA "carv[ed] out the urban areas of Minneapolis and St. Paul that have higher proportions of minority populations." *Id.* Specifically, the United States alleges that KleinBank's CRA "assessment area currently excludes 78 of the 97 majority-minority tracts in the MSA, all but two of which are located in Hennepin and Ramsey Counties." *Id.* at 6. Further, the United States alleges that "KleinBank's assessment area excludes all 37 majority-minority census tracts in Ramsey County, and 39 of the 58 majority-minority census tracts in Hennepin County." *Id.* The United States claims that KleinBank's proper CRA assessment area would include the "entirety of Hennepin and Ramsey Counties." *Id.*

During the relevant period of 2010 through 2015, the Federal Deposit Insurance Corporation ("FDIC"), as a federal financial supervisory agency, conducted three CRA performance evaluations, and three federal compliance examinations of KleinBank. *See* ECF No. 21. During that time, the FDIC concluded that KleinBank's overall CRA compliance was satisfactory and/or adequate in regards to responsiveness to the credit needs of its CRA assessment areas. *See generally* ECF Nos. 24–26; *see also* ECF No 23, Ex. D at 4, 14; Ex. E at 4; Ex. F at 4. The FDIC's examinations of KleinBank tested three CRA performance metrics: lending, investment, and service, with lending weighted more heavily. *See, e.g.*, ECF No. 23, Ex. D at 5; Ex. E at 7; Ex. F at 5. Within lending, small business loans received the greatest weight, home mortgage loans were given less weight, and consumer loans were not analyzed. *See, e.g.*, ECF No. 23, Ex. D at 13; Ex. E at 7; Ex. F at 5. KleinBank uniformly scored "high satisfactory" in lending, both "high satisfactory" and "low satisfactory" in service, and assorted "low satisfactory" and "needs improvement" in investment. *See* ECF No. 23, Ex. D at 5; Ex. E at 6; Ex. F at 3.

**C.     KleinBank's Motion to Dismiss**

In the instant motion, KleinBank moves to dismiss the United States' Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See generally* ECF No. 19. KleinBank argues that the United States' pleaded allegations regarding disparate treatment are bare-bones and conclusory, and fail to state a plausible claim of relief. *See generally id.* KleinBank further argues that United States should be estopped from bringing this case because the FDIC has already concluded, on multiple occasions from 2010 through 2015, that KleinBank's CRA compliance was satisfactory. *See generally id.* KleinBank maintains that it is entitled to rely on the FDIC's findings, and to permit the United States to proceed in this suit constitutes a constitutional due process deprivation. *See id.* at 32–37. KleinBank also argues that the United States Attorney General lacks the requisite authority to bring count one because the United States fails to allege a pattern or practice of discrimination. *See id.* at 37–38.

The United States counters that its Complaint alleges sufficient facts to state a plausible discrimination claim under the FHA and ECOA. *See* ECF No. 35 at 7–12. In addition, the United States argues that it is not estopped from enforcing KleinBank's alleged fair lending violations under the FHA and ECOA because the FDIC never conducted a redlining examination, and even if it did, the FDIC's examination was not focused on the horseshoe-shape of KleinBank's CRA assessment area, which is among the salient facts of this suit. *See generally id.* Finally, the United States argues that the United States Attorney General, not the FDIC, has the independent, statutory enforcement authority to bring a civil action where he has reason to believe that a financial institution has engaged in a pattern or practice of violating the FHA or ECOA, and neither the FHA nor ECOA impose an administrative prerequisite on bringing a civil action. *See*

6

*id.* at 21. As to whether the United States Attorney General has the requisite authority to bring count one, the United States argues that in considering its claims of whether "KleinBank engaged in an unlawful pattern or practice of discrimination or denied rights to a group of persons . . . the Court will necessarily need to examine whether KleinBank's conduct violated the statutory provisions set forth in Count I." *Id.* at 27.

## II. STANDARD OF REVIEW

In analyzing the adequacy of a complaint under Rule 12(b)(6), the Court must construe the complaint liberally and afford the plaintiff all reasonable inferences to be drawn from those facts. *See Turner v. Holbrook*, 278 F.3d 754, 757 (8th Cir. 2002). For the purpose of a motion to dismiss, facts in the complaint are assumed to be true. *See In re Navarre Corp. Sec. Litig.*, 299 F.3d 735, 738 (8th Cir. 2002). Nevertheless, dismissal under Rule 12(b)(6) serves to eliminate actions that are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity. *See Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989).

To avoid dismissal, a complaint must allege facts sufficient to state a claim as a matter of law and may not merely state legal conclusions. *See Springdale Educ. Ass'n v. Springdale Sch. Dist.*, 133 F.3d 649, 651 (8th Cir. 1998). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must contain enough facts to state a claim for relief that is "plausible on its face," and a claim has facial plausibility only when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 570; *see also Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009). The plausibility standard is not akin to a "probability requirement," but it calls for more than a sheer possibility that a defendant has acted unlawfully. *Iqbal*, 556 U.S. at 678.

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* (internal citation omitted). "The pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (internal citations omitted). "[A] complaint [cannot] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

### III. CONCLUSIONS OF LAW

The United States' allegations here rest solely on a theory of disparate treatment under the FHA and ECOA. *See* ECF No. 35 at 12. "Disparate-treatment claims under the FHA are tested under the same framework as Title VII disparate-treatment claims." *Gallagher v. Magner*, 619 F.3d 823, 831 (8th Cir. 2010); *see, e.g.*, *Ring v. First Interstate Mortg., Inc.*, 984 F.2d 924, 926 (8th Cir.1993) (applying the Title VII analysis to a FHA disparate treatment claim). "The standard is familiar—did the defendant(s) treat the plaintiff(s) less favorably than others based on their race, color, religion, sex[,] or national origin?" *Id.* "Proof of discriminatory purpose is crucial for a disparate treatment claim." *Id.*; *see also Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977). The plaintiff must produce "either (a) direct evidence of discriminatory intent or (b) indirect evidence creating an inference of discriminatory intent under the *McDonnell Douglas* burden-shifting framework." *Id.*

The Eighth Circuit has rejected extending the *prima facie* proof of discrimination required under Title VII and *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), "to

measure a plaintiff's complaint" as a "basis for Rule 12 analysis." *Ring*, 984 F.2d at 927. "[T]he prima facie case under [*McDonnell Douglas*] is an evidentiary standard—it defines the [quantum of proof that the] plaintiff must present to create a rebuttable [discrimination] presumption . . . [and] an evidentiary standard is not a proper measure of whether a complaint fails to state a claim." *Id.* Rather, a court's analysis of the plaintiff's complaint "must turn to the statutory elements of a Fair Housing Act claim to determine whether [the complaint] survives [the defendant's] motions to dismiss[,]" *id.,* and whether the plaintiff's complaint states a plausible claim and includes factual content showing an entitlement to relief. *See Twombly* 550 U.S. 557; *Iqbal*, 556 U.S. at 678.

The FHA prohibits "any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such transaction, because of race." 42 U.S.C. § 3605(a). The FHA also prohibits actions that "otherwise make unavailable or deny a dwelling because of race . . . or national origin," 42 U.S.C. § 3604(a), and prohibits discrimination "in the terms, conditions or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race . . . or national origin." 42 U.S.C. § 3604(b). An aggrieved person under the FHA is "defined to include any person who 'claims to have been injured by a discriminatory housing practice.'" *Ring*, 984 F.2d at 927 (quoting 42 U.S.C. § 3602(i)). Similarly, the ECOA makes it "unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction on the basis of race [or] national origin . . . [,]" 15 U.S.C. § 1691(a), and ECOA regulations prohibit creditors from making

statements in advertising that would discourage on a prohibited basis, a reasonable person from pursing a credit application. *See* 12 C.F.R. § 1002.4(b)

Here, the United States has satisfied its pleading obligations under the FHA and ECOA. The United States alleges that KleinBank's horseshoe-shaped CRA assessment area was designed to exclude the vast majority of the majority, minority neighborhoods within Hennepin and Ramsey Counties. That KleinBank configured its CRA assessment area to purposefully include most of Hennepin County, but exclude all of the City of Minneapolis, the location of the majority of the County's majority, minority neighborhoods, establishes, at least an inference, that KleinBank "otherwise made credit unavailable on the basis of race" in contravention of the FHA and ECOA. 42 U.S.C. § 3605(a).[2] KleinBank proffers several reasons as to why it configured its horseshoe-shaped CRA assessment area, including its tradition as a rural, agriculture lender. *See generally* ECF No. 19. However that KleinBank has expanded, since 2007, its branch, financial service, and marketing efforts into the more densely populated census tracts of Hennepin County, while concomitantly avoiding the City of Minneapolis and St. Paul, is redolent of a business philosophy that potentially prefers to avoid minority borrowers. Whether that characterization is accurate is an argument better reserved for summary judgement or trial; at the 12(b)(6) stage, however, all inferences must be granted in the United States' favor. *See Turner*, 278 F.3d at 757.

---

2   The Court notes that during the September hearing, KleinBank argued that although its CRA assessment area excluded the City of Minneapolis, its CRA assessment area was configured pursuant to recognized political subdivisions, including and excluding whole counties and cities. However, it did not appear to the Court, from the map presented, that the Hennepin County carve-out in KleinBank's CRA assessment area followed the precise City of Minneapolis boundaries. Rather, the carve-out appears to include census tracts to the west, and potentially south, of the City of Minneapolis' boundary.

In addition, the United States has offered ample statistical evidence to buttresses its claims. The United States offers statistical evidence that KleinBank, relative to other lenders, originated, i.e., made available, marketed, and extended, substantially fewer residential mortgage loan services to majority, minority neighborhoods. In addition, the United States has shown that KleinBank has not opened a single branch in Minneapolis or St. Paul, positioned loan officers in these cities, or marketed its products and services there, but has otherwise opened branches, positioned loan officers, and marketed its products and services in other parts of Hennepin and Ramsey Counties. These facts establish at least an inference that KleinBank intentionally avoided offering residential mortgages in majority, minority neighborhoods within the multi-county Minneapolis-St. Paul-Bloomington, Minnesota-Wisconsin, MSA, and supports a plausible discrimination claim under the FHA and ECOA. Indeed, that KleinBank has not opened a single urban branch, let alone an urban branch in a majority, minority neighborhood, within the entire MSA supports an inference that KleinBank's residential mortgage lending practices treated certain categories of borrows less favorably than others based on their race. *See Gallagher*, 619 F.3d at 831.

KleinBank argues that the United States should be estopped from bringing this suit because the FDIC has already determined that it complied with the CRA. This argument is unavailing. Assuming without deciding that the FDIC reports can properly be considered at the 12(b)(6) stage, the FDIC's findings are not dispositive. Although the FDIC found that KleinBank had a satisfactory record with regards to helping to meet the credit needs of its CRA assessment area, including the needs of low and moderate income neighborhoods, s*ee generally* ECF Nos. 23, 24, 25, and 26, the FDIC's examinations afforded less weight to home mortgage loans, the

type of loan, which comprises the bulk of the United States' claims here. In addition, ████████████████████████████████████████████████████████████████████████████████████████. *See generally* ECF Nos. 23, 24, 25, and 26. Moreover, neither the FHA nor ECOA forecloses the United States Attorney General from initiating an action against a party determined to be in CRA compliance by the FDIC. *See* 15 U.S.C. § 1691e(h). In fact, the FDIC is, but one of several federal financial agencies that examine CRA compliance and are authorized to refer matters to the United States Attorney General for civil prosecution. *See id.*; *see also* 15 U.S.C. § 1691e(g); 15 U.S.C. § 1691c. In short, the United States' ability to bring this case is not dependent on the FDIC's findings, and the Court finds no support for the proposition that allowing the United States to proceed here constitutes a due process violation.

The Court is mindful of KleinBank and *Amicus*' argument that compliance with a veritable alphabet soup of myriad federal financial, regulatory agencies poses operational, regulatory, and administrative challenges, and KleinBank may very well have believed that it had satisfied its CRA obligations through its putative FDIC compliance. However, the size and scope of the federal financial, regulatory bureaucracy and the obstacles compliance poses are policy arguments that the Court declines to consider at the 12(b)(6) stage. At this stage, the United States has plead sufficient facts showing circumstantial evidence of disparate treatment under the FHA and ECOA, and the inference of discriminatory intent derived from that evidence cuts in the United States' favor under the standard set forth in *Twombly*, and its progeny.

As to the authority of the United States Attorney General to bring count one of this suit, the Court observes that under the FHA, "the Attorney General may commence a civil action"

when the Attorney General "has reasonable cause to believe that . . . any group of persons has been denied any of the rights granted by [the statute] and such denial raises an issue of general public importance[.]" 42 U.S.C. § 3614(a). Similarly, under the ECOA, the United States Attorney General may commence an action when "he has reason to believe that one or more creditors are engaged in a pattern or practice in violation [of the statute]" or when a matter is referred to him by an appropriate federal financial agency. 15 U.S.C. § 1691e(h). The United States has satisfied this standard to bring count one.

The allegations raised in the United States' Complaint demonstrate that the United States Attorney General had cause to believe that KleinBank had not made available residential mortgages to borrowers from majority, minority neighborhoods commensurate with comparable lenders, and was actively avoiding offering mortgage loans to borrowers from majority, minority neighborhoods through its horseshoe-shaped CRA assessment area. That a local financial institution may be avoiding providing credit services to minority borrowers raises, at minimum, an issue of "*general* public importance[.]" 42 U.S.C. § 3614(a) (emphasis added). To that end, the United States has satisfied its pleading requirements and stated a plausible discrimination claim under count one. *See Twombly*, 550 U.S. at 557.

## IV. RECOMMENDATION

Based upon the foregoing, and all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant's motion to dismiss (ECF No. 18) be **DENIED**.

DATED: January 30, 2018                                                         *s/Franklin L. Noel*
                                                                                FRANKLIN L. NOEL
                                                                                United States Magistrate Judge

13

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **February 13, 2018**, written objections that specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within fourteen (14) days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.