# EXHIBIT A

# SETTLEMENT AGREEMENT
# BETWEEN THE UNITED STATES OF AMERICA
# AND KLEINBANK

## I.    INTRODUCTION

1.      This Settlement Agreement ("Agreement") is made and entered into by and
between the United States of America ("United States"), through the United States Department
of Justice, and KleinBank ("KleinBank" or "the Bank"), through its authorized representatives.
The Plaintiff and Defendant are referred to herein as the "parties."

2.      This Agreement resolves a Complaint filed by the United States against
KleinBank on January 13, 2017, alleging violations of the Fair Housing Act ("FHA"), 42 U.S.C.
§§ 3601 *et seq.*, and the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§ 1691 *et seq.*,
*United States v. KleinBank*, D. Minn. No. 17-cv-136 (the "Civil Action").  The parties have
entered into this Agreement to resolve voluntarily the claims asserted by the United States in
order to avoid the risks and burdens of litigation.

3.      Under this Agreement, KleinBank has committed to meet the credit needs of
residents located in majority-minority census tracts in Hennepin County, Minnesota.[1]  The
provisions of this Agreement are designed to ensure that, consistent with safety and soundness,
KleinBank's residential mortgage lending products and services are made available and
marketed in a non-discriminatory manner and to remedy the harm alleged in the United States'
Complaint.

## II.    STATEMENT OF CONSIDERATION

4.      In consideration of, and consistent with, the terms of this Agreement, the United
States agrees to jointly stipulate with KleinBank to the dismissal of the Civil Action.  The parties
agree and acknowledge that this consideration is adequate and sufficient.

## III.    TERMS AND CONDITIONS

### A.    Lending Practices

5.      KleinBank, including all of its officers, employees, assignees, and successors in
interest agree to refrain from engaging in any act or practice that (a) violates the FHA in any
aspect of a residential real estate-related transaction, or (b) violates ECOA in any aspect of a

---

[1] As used in this Agreement, a "majority-minority census tract" is one in Hennepin
County in which racial or ethnic minorities constituted more than 50% of the population at the
time of the 2010 Census.  This term does not refer to majority-minority census tracts in other
counties.

credit transaction.  This prohibition includes, but is not limited to redlining practices, such as discrimination in: marketing and advertising; the selection of sites for and the provision of services through branch offices or other channels, including the placement of mortgage loan officers; the delineation of an assessment area under the Community Reinvestment Act of 1977 ("CRA"), 12 U.S.C. §§ 2901-2906; and the determination of geographic areas in which loan applications are solicited or funded, except as set forth herein.

### B.  Community Reinvestment Act Assessment Area

6.      Within thirty (30) days of the effective date of this Agreement, KleinBank shall revise its main CRA assessment area within the Minneapolis-St. Paul-Bloomington, MN-WI metropolitan statistical area ("MSA") to include all of Hennepin County, subject to any required regulatory approvals.  KleinBank shall maintain that assessment area throughout the term of this Agreement unless its primary federal banking regulator requires changes to the assessment area.[2] Nothing in this Agreement precludes KleinBank from further expanding its CRA assessment area in a manner consistent with the provisions of the CRA and its implementing regulations.

### C.  Expansion

7.      Within one (1) year of the effective date of this Agreement, KleinBank shall open one (1) full-service brick and mortar office, as defined by the Federal Deposit Insurance Corporation ("FDIC"),[3] within a majority-minority census tract within Hennepin County, subject to regulator approval.  The new branch office shall be in a location accessible to concentrations of owner-occupied residential properties in majority-minority census tracts.  The new branch shall provide the range of services typically offered at KleinBank's other full-service branches, to include a full-time on-site residential lending officer, fully trained in all aspects of home mortgage and home equity lending and whose work will include marketing and outreach to residents of majority-minority census tracts in a manner consistent with the terms of this Agreement.  KleinBank shall continue to operate this new branch throughout the duration of this Agreement.

8.      KleinBank has and shall continue to develop partnerships with organizations to help establish a presence in majority-minority census tracts in Hennepin County, in order to continue to increase the bank's presence in these areas and to assist in developing strategies to

---

[2] As of the effective date of this Agreement, KleinBank's federal banking regulator is the Federal Deposit Insurance Corporation ("FDIC").

[3] A "full-service brick and mortar office" must "[a]ccept deposits, make loans, open/close accounts, [and have a] loan officer on site, normal hours, [and] full-time staff; [it] may have safe deposit facilities on site. The site may be owned by the institution or may be leased by the institution."  *See* https://research.fdic.gov/bankfind/glossary.html.

expand the bank's marketing to, and intake of residential mortgage loan applications from, residents of these areas.  KleinBank shall present to the United States a written proposal for continuing its community partnerships not later than six (6) months after the effective date of this Agreement that details how KleinBank intends to engage in the partnership(s) over the term of the Agreement.[4]  The proposal shall explain how the partnerships will assist KleinBank in serving the credit needs of residents of majority-minority census tracts.  The United States shall review the proposal and communicate any objections within thirty (30) days.  If the United States raises objections to the proposal, the parties shall confer in an attempt to resolve their differences.  In the event the parties cannot resolve their differences, they may seek relief from the Court in accordance with paragraphs 22-25 of this Agreement.  KleinBank shall thereafter implement the proposal within the timeframe set forth in the proposal.

### D.    Director of Community Lending and Development

9.     KleinBank shall continue to employ, for the duration of this Agreement: (1) a full-time Community Development Officer and (2) an Executive Leader.  Together, these individuals shall oversee the development of the bank's lending in majority-minority census tracts in Hennepin County.  The Community Development Officer is a member of management whose primary responsibilities include, and shall continue to include, coordinating KleinBank's involvement in community outreach programs; serving as a resource to lending staff to encourage and develop more lending within majority-minority census tracts; promoting financial education; providing financial counseling; and building relationships with community groups; and monitoring the activities of loan officers regarding the solicitation and origination of loans in majority-minority census tracts, including the special purpose credit programs[5] identified in this Agreement. The Community Development Officer reports directly to the Executive Leader.  The Executive Leader is an executive officer who reports directly to the President/CEO.  Together, these individuals will provide reports on at least a quarterly basis to the Board of Directors regarding the bank's performance in majority-minority census tracts.

### E.    Advertising, Outreach, and Consumer Financial Education and Credit Repair

10.     KleinBank shall spend a minimum of $300,000 on Advertising, Outreach, and Education and Credit Repair Initiatives over the next three (3) years to assist in establishing a

---

[4] All material required by the Agreement to be sent to the United States shall be sent by commercial overnight delivery service addressed as follows: Chief, Housing and Civil Enforcement Section, Civil Rights Division, U.S. Department of Justice, 1800 G Street NW, Suite 7002, Washington, DC 20006, Attn: DJ 188-39-32, or by facsimile to 202-514-1116.

[5] Special purpose credit programs, as set forth in 12 C.F.R. § 1002.8, permit a creditor to extend special purpose credit under the terms of a written plan such as this Agreement.

presence in majority-minority census tracts in Hennepin County.[6]  If KleinBank does not meet this spending requirement within three years, this Agreement shall be extended until the amount has been spent.

11.     Within three (3) months of the effective date of this Agreement, KleinBank shall present to the United States a written proposal for Advertising, Outreach, and Education and Credit Repair Initiatives.  The United States shall have thirty (30) days to review and communicate any objections.  If the United States raises objections to the proposal, the parties shall confer in an attempt to resolve their differences. In the event the parties cannot resolve their differences, they may seek relief from the Court in accordance with paragraphs 22-25 of this Agreement. Thereafter, KleinBank shall implement the proposal within the timeframe set forth in the proposal.

### *Advertising*

12.     KleinBank shall increase its advertising and marketing directed to majority-minority census tracts in Hennepin County.  During each year for the term of this Agreement, KleinBank shall advertise or continue to advertise in widely-available print mediums that reach minority readers and residents of majority-minority census tracts in Hennepin County; this shall include, but is not limited to, advertising in at least one medium specifically directed to reach minority readers.  KleinBank shall also create point-of-distribution materials, such as posters and brochures, and shall place or display these promotional materials in its branch offices, additional appropriate distribution locations in majority-minority census tracts, and any additional distribution locations that the bank deems appropriate.  For each year during the term of the agreement, in the event that KleinBank uses radio, Internet, online or web-based advertising, or direct mailings, KleinBank shall ensure that such advertisements reach residents in all of the majority-minority census tracts in Hennepin County.

13.     When viewed in its entirety over the course of a year, the advertising program shall include KleinBank's full range of mortgage loan products, including any special products or services made available as part of this Agreement.  All of KleinBank's print advertising and promotional materials pertaining to residential mortgage lending shall contain an equal housing opportunity logo, slogan, or statement.  All of KleinBank's radio and television advertisements shall include the audible statement "Equal Opportunity Lender."

### *Outreach*

14.     KleinBank shall provide at least two (2) outreach programs annually for each year during the term of this Agreement for real estate brokers and agents, developers, and public or

---

[6] Salaries or other compensation for participating bank personnel shall not be counted towards the amount spent on these programs.

private entities already regularly engaged in residential real estate-related business in majority-minority census tracts in Hennepin County to inform them of the products and services KleinBank offers, including those detailed in this Agreement. These programs shall be offered at locations reasonably convenient to the business operations of the attendees.

### *Consumer Financial Education and Credit Repair*

15.     KleinBank shall provide a consumer financial education and credit repair program as part of its efforts to identify and develop qualified loan applicants from majority-minority census tracts in Hennepin County to remedy the harm alleged in the Complaint:

(a) Financial Education Events.  KleinBank shall sponsor at least two (2) financial education events annually for the term of the Agreement that cover credit counseling and financial literacy, marketed towards residents of majority-minority census tracts in Hennepin County, and held at locations intended to be convenient to those residents.

(b) Credit Establishment and Repair.  KleinBank shall establish at least one of the following special purpose credit programs intended to help residents of majority-minority tracts establish or remediate consumer credit: (1) debt forgiveness (including unpaid principal, interest, escrow payments, and fees) up to $5,000 per borrower (but not to exceed 90% of the total amount owed) for borrowers or co-borrowers who experience difficulty repaying any residential or consumer loan in KleinBank's portfolio; or (2) special purpose checking accounts designed to increase the number of account holders; or (3) another program proposed during the term of this Agreement by KleinBank and subject to approval by the United States prior to implementation.

### F.      **Program for Loan Subsidies**

16.     KleinBank shall invest a minimum of $300,000 over three years in a special purpose credit program that will offer residents of majority-minority census tracts in Hennepin County home mortgage loans and home improvement loans on a more affordable basis than otherwise available from KleinBank ("Loan Subsidies"), to remedy the harm alleged in the Complaint.  The Loan Subsidies can be provided for any residential property located in a majority-minority census tract in Hennepin County, that will serve as the borrower's primary residence, by one or more of the following means:

(a) originating or brokering a loan at an interest rate a minimum of 1/2 of a percentage point (50 basis points) below the otherwise prevailing rate;

(b) a direct grant of a portion of the loan amount for the purpose of down payment assistance, up to a maximum of 3.5%;

(c) closing cost assistance in the form of a direct grant of a minimum of $500.00 and a maximum of $1,500.00;

(d) the payment of the initial mortgage insurance premium on loans subject to such mortgage insurance; or

(e) other appropriate means approved by the United States.

17.     If, after 18 months, KleinBank anticipates being unable to spend or use all of the Loan Subsidies within the term of this Agreement, KleinBank shall propose additional appropriate means of using the Loan Subsidies, pursuant to Paragraph 16(e), above.  If KleinBank does not spend or use all of the Loan Subsidies within three years, this Agreement shall be extended until the Loan Subsidies are spent or used.

18.     The investment of KleinBank under the terms of Paragraph 16 will be the sum total of the cost to the bank of providing the loan subsidy program.

**G.     Fair Lending Training**

19.     KleinBank shall continue to provide fair lending training to all employees, including officers, with substantive involvement in mortgage lending, marketing, or fair lending or CRA compliance, or management responsibility over such employees to ensure that their activities are conducted in a nondiscriminatory manner.  This training shall encompass the FHA and ECOA, to include redlining. KleinBank shall ensure that this training occurs on at least an annual basis for the term of this Agreement.

## IV.     EVALUATING AND MONITORING COMPLIANCE

20.     KleinBank shall make an annual report to the United States on its progress in fulfilling the terms of this Agreement.  Each such report shall provide a complete account of KleinBank's actions to comply with each requirement of this Agreement during the previous year, KleinBank's assessment of the extent to which each quantifiable obligation was met, and an explanation of why any particular component fell short of meeting the obligation for that year. KleinBank's Board of Directors shall review and approve this report, and KleinBank shall submit this report each year for the term of this Agreement within forty five (45) days of the anniversary of the effective date, except that the final report shall be submitted at least thirty (30) days prior to the expiration of this Agreement.  KleinBank shall attach to the annual reports representative copies of training material and advertising and marketing materials disseminated pursuant to this Agreement.  The United States will review each report submitted by KleinBank and will have thirty (30) days to respond with questions and comments as to perceived deficiencies, and if it makes any, the parties shall confer in an attempt to resolve their differences.  In the event the parties cannot resolve their differences, they may seek relief from the Court in accordance with paragraphs 22-25 of this Agreement.

21.     During the period in which this Agreement is in effect, KleinBank shall preserve all records that are the source of, contain, or relate to any of the information pertinent to its obligations under this Agreement.  Upon notice to counsel for KleinBank, representatives of the United States shall be permitted to inspect and copy all such records at any and all reasonable times or, upon request by the United States, KleinBank shall provide copies of such documents.

## V.      IMPLEMENTATION AND ENFORCEMENT

22.     The parties shall endeavor in good faith to resolve informally any differences regarding interpretation of or compliance with this Agreement prior to initiating court action.  If the United States believes that KleinBank has failed to perform in a timely manner any act required by this Agreement, or has otherwise not acted in conformance with any provision thereof, whether intentionally or not, the United States shall notify KleinBank in writing of its concerns through its undersigned counsel.  KleinBank shall have 15 days from the date of the United States' notification to cure the breach.

23.     If the parties are unable to reach a resolution within 15 days, the parties agree that upon any such claim of a breach as made by the United States, the United States may move to restore the present Civil Action to the active docket of this Court for purposes of resolution of any such claim of breach, or may file a separate action for breach of this Agreement, or any provision thereof, in the United States District Court for the District of Minnesota.  This Court shall serve as the exclusive jurisdiction and venue for any dispute concerning this Agreement. The parties consent to and agree not to contest the jurisdiction of this Court.  The parties further acknowledge that venue in this Court is appropriate and agree not to raise any challenge on this basis.

24.     In the event the United States reinstates the Civil Action as contemplated by Paragraph 23, above, or in any lawsuit to remedy a breach of this Agreement, the United States may seek, in addition to any remedy available under law or equity: (a) an injunction mandating specific performance of any term or provision in this Agreement, without regard to whether monetary relief would be adequate; (b) an award of reasonable attorneys' fees and costs incurred in bringing an action to remedy breach of this Agreement; and (c) any additional relief that may be authorized.  If such an action is filed, KleinBank expressly agrees not to count the time during which this Agreement is in place, or use the terms or existence of this Agreement, to plead, argue or otherwise raise any defenses under theories of claim preclusion, issue preclusion, statute of limitations, estoppel, laches, or similar defenses.

25.     Failure by the United States to enforce any provision of this Agreement shall not operate as a waiver of the United States' right or ability to enforce any other provision of this Agreement.

## VI.   <u>TERMINATION OF LITIGATION HOLD</u>

26.     The Parties agree that, as of the effective date of this Agreement, litigation is not "reasonably foreseeable" concerning the matters described in the United States' Complaint.  To the extent that any party has previously implemented a litigation hold to preserve documents, electronically stored information (ESI), or things related to the matters described above, that party is no longer required to maintain such litigation hold.  Nothing in this paragraph relieves any party of any other obligations under this Agreement.

## VII.   <u>DURATION, EXECUTION AND OTHER TERMS</u>

27.     This Agreement is effective on the date of the signature of the last signatory to the Agreement.  The Agreement may be executed in multiple counterparts, each of which together shall be considered an original but all of which shall constitute one agreement.  Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

28.     The parties agree that this Agreement will be in effect for three (3) years from the effective date.  In the event that KleinBank has not completed the obligations it has agreed to in Section III *supra*, the agreement will be extended until such time that KleinBank can complete these obligations.

29.     Except as stated in Paragraph 24 above, each party shall bear its own legal or other costs incurred in connection with this matter, including the preparation, negotiation, and performance of this Agreement.

30.     This Agreement constitutes the complete agreement among the parties.  No prior or contemporaneous communications, oral or written, or prior drafts shall be relevant or admissible for purposes of determining the meaning of any provision herein or in any other proceeding.

31.     Each Party and signatory to this Agreement represents that it freely and voluntarily enters into this Agreement without any degree of duress or compulsion.  The Parties agree that each Party and its representatives have acted consistent with the duty of good faith and fair dealing.

32.     For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

33.     The undersigned represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

34.     This Agreement is binding on the parties and their transferees, successors, heirs and assigns.

35.     This Agreement is governed by and shall be interpreted under the laws of the United States.  For purposes of construing or interpreting this Agreement, it shall be deemed to have been drafted by all Parties and shall not be construed or interpreted against any Party for that reason in any subsequent dispute.

36.     Except where this Agreement expressly conditions or predicates performance of a duty or obligation upon the performance of a duty or obligation by another party, the performance of one party's duties or obligations under this Agreement shall not be discharged or excused by the actual or alleged breach of the duties and obligations by another party.

37.     This Agreement is a public document.  The parties agree and consent to the United States' disclosure of this Agreement and information concerning this Agreement to the public.

38.     Should any provision of this Agreement be declared or determined by any court to be illegal or invalid, the validity of the remaining parts, terms or provisions shall not be affected thereby and the illegal or invalid part, term or provision shall be deemed not to be a part of this Agreement.

39.     In the event that this Agreement or any of its terms are challenged in a court other than the United States District Court for the District of Minnesota, the parties agree that they will seek removal/transfer to the District of Minnesota.

40.     This Agreement may be modified only with the written consent of the parties. Any modification shall be in writing and signed by the parties through their authorized representatives.

**FOR THE PLAINTIFF, UNITED STATES:**

DATED: _May       8_ , 2018

 

                                          JOHN M. GORE
                                          Acting Assistant Attorney General
                                          Civil Rights Division

                                          SAMEENA SHINA MAJEED
                                          Chief
                                          LUCY G. CARLSON
                                          Deputy Chief
                                          AURORA BRYANT
                                          ERNESTINE WARD
                                          CHRISTOPHER BELEN
                                          Trial Attorneys
                                          Housing and Civil Enforcement Section
                                          Civil Rights Division
                                          950 Pennsylvania Avenue, NW
                                          Northwestern Building, 7th Floor
                                          Washington, D.C. 20530
                                          Phone: (202) 616-2602
                                          Email: aurora.bryant@usdoj.gov

 

 

**FOR THE DEFENDANT, KLEINBANK:**

DATED: _MAY   7_ ____, 2018

 

                                          John W. Lundquist
                                          Fredrikson & Byron P.A.
                                          200 South Sixth Street, Suite 4000
                                          Minneapolis, MN 55402
                                          Phone: (612) 492-7000
                                          jlundquist@fredlaw.com